Good morning, Your Honor. Richard Pearl for the Plaintiff Appellant. With me at the counsel table is Paula Ahrens, who is one of the plaintiffs' counsel in the court below. I'd like to save five minutes for rebuttal. The case has been extensively briefed, and my main goal here is to answer any questions the Court may have. I do have two main points I would like to emphasize and go over, if the Court please. First is the issue of the appropriate hourly rate and whether the district court abused its discretion in setting the hourly rate here. The fact is that There have been a number of cases since that this sort of issue has been percolating in the courts a little bit. And I know Welsh is one of the cases where you got the opposition to the rate, correct? So you can, you know, it's not really law of the case, as you might want to argue. No, I don't believe it's law of the case either. But I think it does state the appropriate standard, which is entirely consistent with both Ninth Circuit jurisprudence and the jurisprudence out of every other circuit, which is that in the first issue in terms of legal standards that the district court's ruling violated, is that you first look to the forum community as the community in which to set the rate. And in this case, the district court ignored all the evidence of the forum community and instead looked to rates that had been set in Indiana, Ohio, and the like. And when you read the decisions he cites, those rates were not based on any kind of national fair debt collection practices or market or rate. They were local rates in Indiana and Ohio. New York City. And New York City. But they have no bearing on what the market charges for comparable services here in San Francisco where the case was litigated. This was conducted entirely by declarations. You didn't have an evidentiary hearing, right? Right. The judge took the hearing off calendar in terms of even oral argument. But haven't there been some other northern district cases where Bragg got $250 an hour subsequent to this? Subsequent? I'm just looking at there's a northern district case setting a rate of $210.51. Let's see, I've got maybe that's what it looks like. And I'm looking at my notes here. There's Abdul, Williams, Cohen, and Gray. I can see there's Schuman versus list credit. There's a number of cases, I think, subsequent where the rate's been like $210, $250, things along those lines. There is another case in which I am the counsel on appeal called Camacho, which is coming up behind this case. We just finished the reply briefing on that case. But all of them adopt the same what we believe is erroneous standard. A national fair debt collection practices act rate as opposed to what is the rate that is charged by comparable attorneys for comparable work in this forum. They all are based on the same mistaken standard, in my opinion. And there are also rates, of course, that award Mr. Bragg that rates he comparable to the rates he requested, such as the Deffenbach case, which was affirmed by this Court, which is exactly the same kind of case. And that rate was the only rate at the time that was in front of Judge Conte, which was the Deffenbach. There were other rates proposed, but none of them were precisely the same kind of services in the same forum as the Deffenbach case. But now, in Deffenbach, did the Court discuss any evidence? Was there any evidence proffered to undermine the and contradict the reasonableness? I believe it was the same defendant's attorneys with the same evidence, is my understanding. I wasn't involved in the Deffenbach case directly. I don't think the trial court discussed any evidence that was proffered by the defendants that undermined that amount in that case. As I recall, the district court found that the evidence that the plaintiffs had proffered was adequate to show the rates they requested was reasonable, and it cited to that evidence. I assume that meant it disregarded the evidence proposed by the defendant. The defendant did appeal that, and this Court affirmed. Fair debt collection is a fairly specialized area of practice, is it not? I believe so. I think attorneys who do fair debt collection may do other forms of consumer law, but generally, yes. And when you're dealing with an area of law that is a specialty, if you look at communities with an equivalent cost of living like New York City, isn't there an informative comparison that can be made? There are. It may be informative, but in no other areas do we look to, in civil rights practice and any other kind of practices, do the courts look to, in San Francisco-based litigation, look to New York City rates or any other forum rates. And the rate that the plaintiffs presented no contrary evidence on New York City rates because they did not believe that was the proper standard. But if you look to what New York City rates are for all kinds of comparable litigation, which is the standard, they may be very well, there may very well be substantial evidence, I'm sure there's substantial evidence, that attorneys with 28 and 30-some-odd years of experience charge substantially higher rates than the Court awarded here. Let me ask you, do you contest that, I mean, the Court made a finding that this wasn't a particularly difficult or complex fair debt collection practice case, right? Yes, it made that finding. Do you disagree with that part of it? I disagree that these cases are not complex. I think this was a class action that involved discovery of the class. It involved an issue that's being litigated in many different forums. It is not a simple cookie-cutter case. Now, it doesn't compare, perhaps, to a very complex antitrust case, but it certainly compares in complexity to most district court litigation. The fact that the plaintiff's attorneys are experienced in it and have a body of work to rely on only shows that their expertise can make them more efficient. It doesn't show that the case was simple. But the class here was never certified, right? No, but class relief was. A motion for class certification was filed, and at the time the defendant's response was due, they proffered a Rule 68 offer which gave relief to the class. So there was no need to proceed to class certification because they got full relief for the class. The entire class got restitution of the invalid charges and a permanent injunction against this practice based on the Rule 68 offer. Do you want to reserve some time for rebuttal? Yes. Have I used my time? No, no. You've got 13 minutes left, but I think we have your argument in hand, so. I do want to reserve some time for rebuttal. Sure. I want to mention two other points. First, and I've alluded to this, the standard is not what is charged or awarded in other FDCPA cases. The standard that the courts have adopted throughout the country and in interpreting Congress's intent is that lawyers who do FDCPA cases are entitled to the rates that are charged by comparably qualified attorneys for comparably complex litigation of all types. And the reason for that is simple. Congress wants, enacted the FDCPA in order to get private attorneys to take these cases. And if they're going to get second-class rates for doing them, they're not going to take them. They are, Congress intended that they be compensated by the same standards that apply to other lawyers doing other kinds of work. And so restricting these cases to FDCPA rates is a violation of Congress's intent. And my third point is that the district court's disregard for the evidence that plaintiffs presented is also a violation of the standards that have been established in this circuit. Judge Callahan, you asked if there was contrary evidence presented. But the fact is there was contrary evidence presented here, but the district court ignored that. It ignored the plaintiff's evidence and it ignored the defendant's evidence. And this Court, it's my understanding that this Court and an appellate court should not affirm a decision that's based on the wrong legal standard, even if the court had applied the correct standard and it could have been supported. In other words ---- So that's how you're arguing that this isn't an abuse of discretion standard? Yes. And I think I have case law on that, but I think it's a well-established point. If the issue is, was there substantial evidence to support a decision that would have been based on the right standard, that's not grounds for affirming the decision. The judge applied the wrong legal standard. The case has to be assessed by the right legal standard, not assessed on the hypothetical that if he had applied the correct legal standard it could be affirmed. Was it appropriate for the judge to compare pleadings in other fair debt collection practice cases to determine if there was sort of a similarity of pleadings that would have been used in the production of pleadings? I think it's fair to compare other pleadings in other cases, and it's fair to compare other FDCPA decisions, but not exclusively. And as I said, I think comparing the pleadings that were filed in other cases to this case and saying, well, Mr. Bragg and Mr. Ahrens had done similar work before only highlights the need to compensate them at a higher hourly rate, because ---- Sotomayor, I don't want to go from one case to piggyback into another case and say changing the names appropriately, but that this does not require a great deal of intellectual challenge to prepare the pleadings in case A, case B, case C when all you're doing is changing the names and the amounts involved. Well, I think there's more to it than that. But even when lawyers are able to use prior work, they're in a field of their expertise. And because they have a prior body of work, they're able to file another case in that same area with much less effort by using their prior pleadings. That should be a factor that warrants a higher rate, not a lower rate, because it's that expertise that this client ---- That sounds a little counterintuitive to me. If I can prepare a pleading in case A in 2 hours and then use it to prepare the pleading in case B in 15 minutes, should I be able to charge 2 hours in case B? Oh, they have not done that, Your Honor, absolutely not. No one did that in this case. No one charged 2 or any time for any work that was done in prior cases. What happened here is perhaps the first time they created this pleading, they spent 10 hours. In this case, they were able to do it in 2 hours or 1 hour. And when you hire a lawyer, and if that lawyer has that body of work and that expertise, you generally will pay more for that expertise than you would pay to a lawyer who hadn't done a body of work before and had to create it anew. So there is no allegation here and no finding that the plaintiff's attorneys took work from a prior case and charged the hours that were done in the prior case to this case. That simply didn't happen. And there is no finding of that. I'm not saying to charge the hours from the prior case to this case, but to consider whether the hours charged for a pleading in this case don't seem slightly padded to reflect more than the time that was actually spent. I mean, obviously, the judge seems to have determined that that seemed to be the situation. With a few discrete items, with the discovery and the fees, but not on the basic pleadings on the merits. He did not reduce the hours on the basic pleadings on the merits by much. A little bit here and there, but it wasn't based on the assumption that the work had been done before. But our point is, and just to finish up on the rates, that the judge, that it was an abusive discussion to disregard all the evidence that had been presented on rates, including the Defenbaugh award, the two declarations from local attorneys with knowledge of local rates, and counsel's own declarations. I want to move on to the second issue, unless the Court has more questions on rates. The second issue is the time on the fee motion. The judge awarded each, Mr. Ahrens and Mr. Bragg, .3 hours for the fee motion and 2 hours for a law clerk who didn't actually work on the fee motion. And I think all this Court has to look at is the work that was done. Here's plaintiff's moving papers here. Now, there's an allegation that a lot of the work was done, that a lot of the work was similar to work that had been done before, and I think the Court might have even used the phrase virtually identical. But that's not true. If you look at the memorandum, at least five pages out of the memorandum are unique to this case, drafted originally for this case, as are sections of the declaration. But let's not even go with the initial memorandum. Then you get the opposition. Here's the opposition to the fee motion. Twenty pages of briefing, 13-page declaration, and two volumes in the appendix, and then some more briefing included in that in the opposition to the fee motion. Twenty-page memorandum. Then you get plaintiff's reply, an 11-and-a-half-page reply, and two, a six-page declaration and a five-page declaration. And the trial court awarded plaintiff's counsel 0.3 hours each. That's just arbitrary. It's just unrealistic. It's as clear an error, factual error, as I can imagine. It can't be done, and it shouldn't be done. No lawyer should spend 0.3 hours dealing with issues like this. No lawyer can spend 0.3 hours on the issues that are raised in this opposition. And it was simply punitive, and I would and should not be upheld. The hours that were spent were incredibly modest for the level of work that was required for this fee motion. On the original motion, Mr. Aaron spent 6.8 hours. Mr. Bragg spent 2.1 hours. For the entire reply, responding to this, 20-page memo, 13-page declaration, and two volumes of exhibits and more memos, Mr. Aaron's claimed 10 hours. Now, I just don't know any competent lawyer who could have spent less, and I would have certainly expected it to be a lot more. But 0.3 hours is just irrational, with all due respect. And the decision on that issue should be reversed as well. And I'll save the rest of my time for rebuttal. Roberts. Thank you, counsel. Good morning, Your Honors. Good morning. It appears that you need to identify yourself for the record. Thank you, Your Honor. My name is June Coleman. I'm from Ellis Coleman, Poirier, LaVaughn, Steinheimer, and I represent Apelli Credit International in this appeal. I'm sure you have prepared remarks, but let me tell you what my area of concern, just starting out, so that you can – I don't see the Court's rationale for not allowing the travel expenses and travel time. That isn't Ms. Johnson entitled to the counsel of her choice to represent her at the deposition. I think that the Court's stretching it to say that you just have to get someone out of town to do something like that and step in under the circumstances. So I've got a problem with that. I would like you to address that. Well, I think the Court's position was that there was a possibility of two alternatives. One was that Mr. Ahrens could represent Ms. Johnson. Mr. Ahrens was the counsel. There's some evidence in the record that he had health problems, right? And I think that he did have health problems, although I don't know how long those health problems lasted. But this was raised in the opposition. It was not addressed in the reply brief at all. And I think that under those circumstances, appellants' belated arguments on appeal should be waived. Are you saying they raised it for the first time in appeal? I mean yes. They argued that they were entitled to certain hours in their motion. We opposed their motion saying that the travel time was unreasonable. We thought it was unreasonable. We thought that there was local counsel, competent local counsel in which they have co-counseled with previously. And I think there are three identified. But when you hire someone, why should the court just step in and say, okay, well, there's someone else in town that could do it. So I expect you to do that because that would save money. I mean, that's going a little far. I mean, let's say someone hired Mr. Ellis or hired you and they said, well, you know, there's someone else in town that can go and appear for you, but your clients didn't hire that person. And I agree, Your Honor. I agree that if a client hires a counsel, they should be able to have that counsel appear at hearings or at depositions. And I think it's a gray area. I think under these suspections, certainly. Well, why is it a gray area at all? I mean, it seems to me if you the problem here is because the local rule requires you hire a local attorney. If the local rule did not require that add-on expense as a mandatory condition of practicing in front of this court, you wouldn't have any argument at all, would you? Well, I think there's, again, I think there's a couple of issues that make these circumstances a little different. First of all, there was no local attorney. There was no attorney that lived in California that was representing Ms. Johnson. Mr. Ahrens lives in Seattle. Mr. Bragg lives in Illinois. So who does she get to defend her deposition? We would argue that Mr. Ahrens should. Why? Because he's closer, because he appeared at all the hearings, because he typically defends all of his clients. It's nice of you to want to run their litigation, but I think that's exactly the reason that people go hire lawyers, so that the other side doesn't run it. And particularly to defend your own deposition. I mean, you may say there are some, for convenience of minor parties, that's an argument. But it's hard to say that the client isn't entitled to attorney of choice to defend the client's own deposition. Frankly, Your Honors, I believe that this is a gray area. I believe that ---- I don't find it very gray at all, frankly. I believe ---- Do you have a case that says that we can discount because the court believes that somebody else should have defended the deposition? I don't believe that there are. There's a case that goes either way, actually. I believe that there are cases that talk about a reduction in the hourly rate for travel time. Sure, but that's not what happened here. I mean, if the district court had said, you know, travel time is different, and I'm not going to allow you your full hourly rate for travel time, this would be a different case entirely. But here, it just said, no, you don't get any of it at all because someone else could have defended the deposition. All right. Well, I think your response on this tells us that's not the strength of your case. Why don't we move to what the questions that I have, you know, they've put forward, the main part of what they're contending is fixing the hourly rate as where it was. I'll frame the question, and then you can respond with where you're coming from. It seems to me that attorney's rates are supposed to be set on a case-by-case basis, and that an argument can be made that you're advocating that there should be a national rate for fair debt collection cases. And if that's what you're advocating, doesn't arguing for a national rate violate the principles of setting a load star and adjusting it using the curve factors? And I think that the representation that defendants or appellees are arguing that we're advocating a national rate is inaccurate. I believe that one of the things we did was show cases with similar services and what the rates were in those cases. They were across the nation, they were in areas where they have similar hourly rates, such as New York City, and they were in other areas in which arguably the rates could be slightly lower. Back in the Midwest, we are not arguing for a national rate or even for an FDCPA rate. In fact, you tendered evidence that there was a prevailing market rate in this area, right? I'm sorry? Didn't you tender some evidence that the prevailing market rate here was 250? We did, Your Honor. So how can the district court have concluded that there was no prevailing market rate? You tendered evidence that there was a local rate, they tendered evidence, and the district court made a finding there's no local market rate. What in the record supports that factual finding? Well, I think that the court's representation that there wasn't a market rate had to do with the fact that there's no rate in which a plaintiff would pay a plaintiff's case, that there are no plaintiffs that are paying hourly rates. I think that's where the court was coming from.  the fact that there's no rate in which a plaintiff would pay a plaintiff's case. But seriously, though, when you look at this record, you tendered a market rate, they tendered a market rate, and the court says there's no local market rate. What basis in the evidence did the court have for making that factual finding? Well, I think actually, Your Honor, that we were the only people, the only side that tendered a market rate. I think that the court's definition of market rate is a rate that's actually paid by the client. Our evidence was that in our representation of defendants and in our firms and our offices' representations of clients, the market rate that we are able to obtain for the services involved would be in the range of $200 to $250. The evidence submitted by plaintiffs, by appellants, was not that of a market rate, but rather it was evidence that fees had been awarded at an hourly rate. I believe that the court's use of the term market rate had to do with a client paying an attorney. A plaintiff as opposed to doing defense. Exactly. And you were trying to say, you were trying to argue that, okay, because this is what we get paid, then that's what plaintiffs should be paying. Exactly. Exactly. And the evidence in front of us Did you tender how much you had been paid in this case? Yes. And how much was that? The total. Our hourly rate was I know your hourly rate, but how much was your firm paid in this case? Did you tender that? That evidence wasn't before the court. It's not something we submitted, and I don't know it off the top of my head, Your Honor. There are lots of cases that talk about the fact that the total fees that are billed from one side to the other are not relevant to what the fees are billed on the other side of the V, because there are different motivations, there are different tasks involved. In this case, take the motion for attorney's fees. Plaintiffs filed a brief and a reply brief. We filed an opposition. So, you know, how many hours, you know, are the hours we spent comparable with the hours that plaintiffs spent? I would argue I just asked whether it was in the record. I wasn't It actually wasn't. In fact, the evidence before this Court on fees, I mean, with all due respect to appellants who argue that the Court, you know, decided this issue based on, you know, three cases out of three different districts. The evidence before the Court on appellant side was the declarations of two counsel that said our rates are reasonable. Plaintiffs' counsel. The declaration of two, quote, unquote, expert witnesses, which said that based on their skills and their experience, the hourly rate was reasonable. In fact, the rubric for determining hourly rate has three prongs to it. And I think the Finkelstein decision really analyzed those issues very clearly. But the issues were that the rubric is in the same community, similar services and comparable skill experience and reputation. The evidence that plaintiffs submitted was void of anything that related what the evidence was to whether the services provided were similar. Well, doesn't, I guess, that appellant relies on what, Defenbaugh and Welsh? How do you distinguish those cases? Well, Defenbaugh, you are correct. The opinion does not speak to what the evidence was before the Court that defendants submitted. I can personally testify to the fact that the evidence was completely different, that the declaration that was submitted by defendants in this case was not submitted in the Defenbaugh case. The Defenbaugh case relied primarily on two different or three different things. One was the declarations of Mr. Aaron and Mr. Bragg, which are virtually the same, admittedly. The second thing was a decision in a case called Irwin v. Nascot, a fee decision in which the Court awarded 400, right around $400 an hour. That was an unopposed fee application after a settlement. I would present to the Court that that's not even persuasive evidence. And the third thing the Court relied on in Defenbaugh were a couple of decisions which discussed an hourly rate. The decisions in the cases that Defenbaugh relied upon discussed cases involving lengthy litigation over years, involving thousands of hours. The services provided in those cases were not similar to the services provided in Defenbaugh. And they're not similar to the services provided in this case, either. Well, you know, the funny thing, though, is when you look at the Court's decision here, it doesn't contain any of the rubric analysis you're talking about, nor any of those considerations. It just says, well, here are a couple of cases, and that's how I'm going to set the rate. So that's what troubles me in this case. If the district court had had a full hearing and errored all these things out and come to the same conclusion and written it up, I would have felt somewhat differently. But it's troubling to me that we just get a paragraph which slashes an hourly rate based on the reasoning contained in there. I'm just giving you a reaction. I may end up, you know, I haven't decided how I'm going to decide the case or at least vote on the case yet. But that's what troubles me. Well, I think if you look at the decision as a whole, I mean, the Court has clearly analyzed all of the pleadings that were submitted to the district court. And despite the fact that there wasn't an oral argument, I think everybody agrees that the briefing was very extensive in this matter. The Court had in front of it all of the... Didn't the Court go back on this? It kind of took this a couple of times, gave a more, a longer explanation or not? Or was there just, were they asked to, was the Court asked to give a longer explanation after its first explanation or no? No, I don't think it was. Okay. But the first several pages, you know, goes through the history of the case. Right. It's clear that the Court has read the document. I don't doubt that. When it gets to the hourly rate issue, it says there's no prevailing market rate, i.e., there's no evidence that plaintiff pays some hourly rate anywhere in the information. And then goes on to say that the, what I think the Court is saying is that the evidence before the Court indicates that the prevailing rate should market rate, given the similar services and all of the information, all of the evidence, is in the range of, you know, 200 to 250. And gosh, there's case law that says, district court cases that says that this is about right in similar types of cases, including a decision on the Southern District of New York, New York City. And in light of the fact that San Francisco has higher rates than some of the other areas, we're going to go with the higher end of that. I don't believe that the Court's analysis indicates that it was looking at a national rate. I don't believe that its analysis indicates that it was looking at an FDCPA rate. I don't believe that it was looking at an average and saying ---- FDCPA rates. So it's hard to conclude otherwise. Well, I would have preferred if the Court had ---- I mean, you get hurt by a national rate because then that's presumably higher than most of the, in other cases, not particularly this one. But a national rate generally would be higher than a local rate. I think it all, I think it depends on the case and on the facts that are used to develop that national rate. But I think that Justice Callahan correctly noted that there are a lot of cases in California, in San Francisco, in which hourly rates have been in the range of $200 to $250 an hour for similar services cases. And the evidence before this Court, the underlying district court, included a citation to a case called Yahoo!, in which the Court awarded $190 an hour for a very simple case. It also included citations to two other cases, Ventura and Enri Avery, both out of the Northern District of California, which had rates that were in the neighborhood of $200, $250 an hour. Yahoo! was not an FDCPA case. Enri Avery was not an FDCPA case. So I think the evidence before the Court clearly supports a finding of somewhere in the range of $200 to $250 an hour. At least $250 an hour is clearly supported. I think that the focus of the Court, and it's quite interesting, there's not any opinions that really focus on this issue of similar services. I mean, I think that the Court really needs to look at this issue of do we pay $400, $500 an hour to do simple cases, non-complex cases. And despite the fact that this was filed as a class action, I would propose to the Court that not every class action is complex. And in an FDCPA case where the issue is, was a letter sent, and the class is defined by whoever was sent a letter, and the only class discovery that was conducted in this case was, in which there was any, you know, substantive response before certification, was how many people were in the class. Again, this is not a complex case. This is not a novel case. This is not a significant case. You want to look at an issue that, where these issues were significant, where the case was novel, you look to Irwin v. Mascot, which was heavily litigated, heavily defended, lasted numerous years. Here we're looking at a case where the state of the law is established. The, you know, the services that were provided were minimal and simplistic and not complex. Did you challenge, not to interrupt, but did you challenge the .1 designation of time increments? The district court said, I disapprove of this .1 time increment time billing. Did you challenge that? Yeah. Actually, Your Honor, we did. We actually extensively looked at the hours and pointed out to the Court where we believe there were overages in many different areas. One of those areas was the idea that Mr. Bragg could complete a depot notice, and I think it was .9 hours to complete a depot notice, and then prepare a fax for that depot notice, which was .1 hours. There are other issues. Right. No, but the district courts seem to take issue with the time recording in .1 hourly increments. I think if you look back at the order, the district courts. Which is common, you would have to say. Your firm probably uses that. You don't. Some people do quarter hours, which I think is excessive. But I've never seen an opinion in which the .1 incremental time period has been challenged before, generically. I think that the Court's problem with the .1 billing was twofold, and it was not the fact that it was billed at .1. The fact was the Court's first concern was that the incremental activities were broken down to such a fine timeframe that you would bill, and by way of an example and some sense exaggeration, you know, get the form of the deposition document, open the document on a computer, type in the case caption, you know, down to prepare a fax that says to June Coleman from Randbragg, deposition notice, and putting on a fax machine and faxing it. I think the Court's concern was that, first of all, that actual activity should really have been included in the prepared deposition notice. And, in fact, can you ---- I don't understand that logic. I mean, it seems to me that that sets it out in more detail. I mean, if that's what you were doing for five minutes, it's a different type of activity than preparing the notice. But is it five minutes or is it one minute? Did preparing the deposition notice take 49 minutes, faxing take another minute, and therefore the whole thing took 50 minutes, which is .9, but if you broke it down into two separate tasks, it would be .8 and .1. I think that was the Court's first concern. No, but I mean, I was looking at some of these. And, granted, I don't usually quarrel with any of the ---- when I see a reduction of attorneys' fees when it's gone through carefully, but I think one of the calculations was 36 minutes to prepare interrogatories, which I would find extraordinarily ---- you'd have to ---- the Court was concerned about using interrogatories in their case, but still, 30 minutes to prepare a draft, that's a ---- even printing it out sometimes would take a great deal of time on that. So ---- I think if the Court looks back at the excerpts of records and supplemental excerpts of records and looks at the discovery requests in comparison with discovery requests that were issued in very similar cases, you'll see that it's a duplication, that, in fact, there was a change in the caption and the 36 minutes was for purposes of reviewing that to make sure that the names were changed to reflect the parties. I think that is ---- you know, it's a ---- So I think the Court's second concern when it talked about the .1 hours was that there was administrative and clerical time that was being pushed into the entries. So I think that when it looked at the fact that there were 60.1 entries and that many of these tasks appeared to be related to another task or they were clerical entries, the 5-hour reduction that the Court made reflected not only 5 hours with respect to the .1-hour entries, but the concept that the other entries that were on Mr. Bragg's time records were also inflated unnecessarily. Any further questions? I took you over with my questioning. Are there any final remarks you'd like to make? You know what, Your Honor, I had basically concluded my final remarks that I think that the Court really needs to look at the similarity of services provided in looking at what is a reasonable hourly rate, the representation in the declarations that it's a complex case and complex cases get somewhere between $400, $500 an hour or more, doesn't really address whether this case and the services that were provided in this case rise to that level of an hourly rate. I think if the Court looks at the services provided in this case, the Court will agree with the district court below that the proper hourly rate is $250 an hour and that there's been no abuse of discretion. Thank you, counsel. Thank you, Your Honor. Very briefly, Your Honor, I want to get back to the hourly rates issue. First, what defendant has said just brings to the floor the point I made earlier about the proper standard of review. They are arguing that if the district court had considered these other decisions that were in the record, it could have supported its decision. But it didn't rely on those, and we've had no opportunity to brief the relevance of, say, the Yahoo case, which was based on an entirely different standard than has ever been applied to the FDCPA. So it is with good reason that the law is that if a court makes a discretionary standard-based decision based on the wrong legal standards, it should be reversed and can't be affirmed because if it had applied the right standards, there might have been some evidence to support it. I'm very much in favor of what defendant said in terms of examining similar services. That is the standard. That's the standard Congress intended, but not just similar FDCPA services, but similar services of all kind. And what the district court did here was not to examine similar services. If you look, for example, at the New York case it cited, that was an individual action that settled immediately with a Rule 68 offer, no class certification, no class relief, no discovery, no nothing. One of the other cases the district court cited, I believe the Indiana case, was also an individual case, not a class action. So they weren't similar services. And as I said, the courts in those cases looked to what the local rates were. They didn't look to a national rate. They looked to what was charged in Indiana or Ohio for comparable services. The legal way to do that is to look at what the local rates were. I think the difficulty with that in this particular case is, you know, I accept the fact that you one may charge a premium for specialized services, but let's just take the deposition notice. That's not a specialized service. And there was no slide. Sometimes people submit sliding rates depending on the nature of the service performed. They do, Your Honor. Here, you know, I mean, is a deposition notice in a case in which somebody has justified paying $200 an hour the same as $500? It's the same deposition notice. There's no expertise involved in that, is there? I recognize that point, Your Honor. But there's two points here. One is Plaintiff's counsel did exercise billing judgment. There's many hours that they did not charge for in the exercise of billing judgment. So they didn't throw in the kitchen sink. And second, it's just the nature of the practice that sometimes experienced attorneys, particularly attorneys who don't work in large law firms, are going to do things that don't require their highest level of expertise. They generally do not alter their rate. And I would refer the Court on that point to the fee motion. And if you look at Mr. Bragg's fee entries, most part of his time, the point ones that they complain about, were spent instructing his law clerk and associates to do the work. And when they did the work, that work wasn't claimed. So I think they did exercise it. And if occasionally they didn't. Well, is it possible that on the point ones, the way that they came up and there were so many of them that the Court just didn't believe that, you know, thought that, hey, that was already taken care of in these other bills and just didn't believe it? Is that possible? I don't think so. If you look at the point ones, they're all legitimate, compensable work. And, you know, the problem with the point ones. What did the Court say about the point ones? It said it didn't find them credible because there were so many of them. All right. So how do we jump over that? Well, I don't think the fact that there are a lot of point ones, it just can't make a time record not credible unless you look at the work and it's not credible. Just the fact that you use point ones, there's no other way to keep time. That's what everybody does. And I would like to give you one example of the point ones, because I think without almost without exception, if you look at all the point ones, they are compensable work. And the problem is if you lump them in with the other entries on the same day, then the defendant comes back and complains about block billing, which is what Welch said, you can't do. So you're kind of damned if you do and damned if you don't. Right. But let me show you two examples on the block billing. It's on ER, on the excerpt of the record 188. The first entry from Mr. Bragg, and I can't read the date now, it's too light, but he gives an assignment to his associate to draft, to calculate the costs and fees for his case. It takes point one to give that assignment. That's a perfectly legitimate and compensable activity. The last activity, review letter from June Coleman, reattorney's fees, e-mail comments to Paul Ahrens, point one. He didn't break that up into point one for reviewing and point one to send. If Mr. Bragg was abusing the system, and that's the kind of abuse that sometimes occurs, that's what he would have done. He would have broken that up into two entries. There was nothing objectionable about these point ones. It's the only way you can record compensable time that doesn't take up to six minutes. So I think ---- How do you deal with the defense argument that really there is no market rate for this kind of activity, that it's a plaintiff's bar, that essentially it's not a rate that's charged between a willing buyer and a willing seller, if you will? You know, Your Honor, that is exactly the same argument and the same issue that occurs in all different kinds of public interest law, civil rights enforcement. It is exactly the situation that pertained, for example, in the Blum v. Stenson case, the seminal decision on hourly rates. These were legal aid attorneys whose clients can't pay them for that kind of work. When Congress enacted the Fair Debt Collection Protection Act, it knew that the plaintiffs in those cases were not going to be paying, could not afford to pay market rates for the kind of legal issues that were going to have to be litigated. The stakes just don't warrant that. There's a $1,000 penalty. Maybe there's, you know, $1,000 maximum statutory damages. Even if the clients could afford it, they're not going to pay lawyers their market rate to do them. But Congress said we want private lawyers to enforce this, so we are going to give them the rates that other attorneys get for doing comparable litigation. And that's repeatedly established for the Fair Debt Collection Practices Act in the Tolentino case out of the Seventh Circuit and numerous cases, including cases out of this circuit. And it's established in the civil rights area, for example, in Davis v. City and County of San Francisco. It's established in the consumer area in a case called Seymour v. Platte Valley. It's well established, and there are no circuit court cases that I'm aware of that dispute that proposition, that Congress intended Fair Debt Collection Practices Act lawyers to be paid by the rates that are paid to other lawyers for doing comparably complex work, because there is no real market. We concede that. There aren't people out there paying plaintiff's lawyers to do Fair Debt Collection Practices Act cases. So what Blum says and what all these cases have said is if the purpose of these statutes is to work, we have to pay these lawyers the same that they get from commercial clients who do pay market rates. And that's why the system works. And if you pay them some kind of discounted Fair Debt Collection Practices Act case because of the small damages involved, then Congress's purpose would be thwarted because people aren't going to do them. Roberts. Thank you, counsel. Thank you, Your Honor. The case has heard it will be submitted, and I assume that neither of you believe this is a settlable case. True? We've had some settlement discussions, but I think that those have not gone to fruition. Okay.
judges: Roth , Thomas, Callahan